MORIAL, Judge.
This appeal arises from a dismissal by the district court of a damage action alleging production and sale of a defective tire, brought by plaintiff, Jerry O. Smith, against defendants, Uniroyal, Inc. (Uniroyal) and World Tire and Supply Company, Inc., a/k/a Delta World Tire Company, Inc. (World Tire).
On September 24, 1971 plaintiff purchased from World Tire two F/60 X IS Delta Trans AM tires manufactured by Uniroyal for his 1967 Chevrolet Corvette. On May 15, 1972, while driving this vehicle in St. Charles Parish, plaintiff was involved in a one car accident which resulted in personal injuries and extensive property damage. Plaintiff alleges that the *792 accident was caused by tire failure resulting from a manufacturing defect.
Plaintiff sued World Tire and its insurer, Gulf Insurance Company, and Uniroyal and its insurer, Reliance Insurance Company. Thereafter, Government Employees Insurance Co., plaintiff’s collision insurer, intervened in the suit alleging it was entitled to recover the sum of $1,195.-00 for funds it had paid out in repairing plaintiff’s vehicle. Gulf Insurance Company and Reliance Insurance Company were subsequently dismissed from the suit after findings by the trial court that their policies did not afford coverage under the factual situation set forth in the petition.
After trial on the merits, judgment was rendered in favor of defendants, Uniroyal and World Tire, dismissing plaintiff’s suit. Plaintiff appeals. We affirm.
The sole issue confronting the trial court and before us on this appeal is the determination of whether the tire which failed and caused the accident was defective at the time it left the manufacturer’s possession. A total of three experts, two for plaintiff and one for defendants, testified on this point.
The first expert to testify for plaintiff was Dr. Clayton Callahan, a professor of chemical engineering at Louisiana State University. Dr. Callahan testified that he caused to be performed two chemical analyses on sections of the tire and found that the tire was composed of at least 10% ethylene propylene rubber (EPR). He stated that EPR was an inferior type of rubber which would not fasten properly to the cords of a tire. His opinion as to the cause of the tire failure was that the presence of EPR resulted in poor binding of the treads to the cords thereby causing a separation. He admitted, on cross-examination, however, that his tests were not sufficiently discriminatory to tell exactly where in the tire the EPR was located, and that if it were in an area other than the bind area, its presence would not explain the failure.
Plaintiff’s other expert witness was Dr. Gerald Whitehouse a professor of mechanical engineering at Louisiana State University. His inspection of the tire was wholly visual and his opinion was that the failure of the tire was caused by a tread separation in the vicinity of the outer plies. Although he noted a puncture in the tire, he did not believe that could have caused the separation. He could not conclude though, based strictly upon his personal observations, that the tire was defective when it left the manufacturer.
Defendants’ expert was Mr. William Briscoe, UniroyaPs manager of tire reliability. Mr. Briscoe testified that Uniroyal makes no tires with EPR, but noted that there are other ethylene propylene materials utilized by all tire manufacturers which give chemical reactions similar to EPR. He further stated that even if EPR was present in the tread, it would still not have been the cause of the failure due to the fact that the separation occurred between the belts. He believed that the tire was perfectly sound when it left the Uniroyal factory and that its failure resulted from a puncture. He opined that a “cratering effect” around the puncture area indicated that a puncturing object had stayed in the tire for some period of time causing a slow air loss. When the air pressure in the tire got down to approximately 6-8 pounds, the temperature rose to above 400 degrees and the structure destroyed itself in the upper shoulder area. He believed this conclusion was supported by the fact that plaintiff testified that he heard no sound prior to the tire going flat. He testified that normally, when a fully inflated tire goes flat and pieces fly off, a loud bang would be heard.
Although no written reasons for judgment were provided, the trial court confronted with this conflicting expert testimony apparently concluded that the *793 inferences drawn by defendants’ expert as to the cause of the failure were more credible than those drawn by plaintiff’s experts. After a careful review of the record, we cannot say that this conclusion is manifestly erroneous.
The judgment of the trial court is affirmed.

AFFIRMED.